IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| In re:<br><br>DARCY L. LAPIER,<br><br>    Debtor. | § § § § § § § | Chapter 7<br><br>Case No. 18-03643 (CCJ) |

**THIRD AMENDED NOTICE OF INTENT TO CONDUCT BANKRUPTCY RULE 2004 EXAMINATION AND FOR PRODUCTION OF DOCUMENTS**

To: **Darcy L. LaPier** ("You," "Your," or the "Debtor"), 36550 NE Wilsonville Road Newberg, OR 97132 and through her attorney of record, Walter J. Snell, Snell and Snell, P.A., 436 N Peninsula Drive, Daytona Beach, FL 32118.

PLEASE TAKE NOTICE that pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2004-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Middle District of Florida, Marie E. Henkel, Chapter 7 Trustee (the "Trustee") submits this *Third Amended Notice of Intent to Conduct Bankruptcy Rule 2004 Examination and for Production of Documents* as follows:

1. The Trustee, by and through her counsel, will conduct a Bankruptcy Rule 2004 examination of You on **Thursday, March 7, 2019, at 12:00 p.m. (EST)** or such other date(s) and at such other time(s) and place(s) as shall be mutually agreed upon in writing among You and the Trustee, unless otherwise extended by the Court.

2. The Bankruptcy Rule examination will take place via video conference at the Office of the United States Trustee, 620 SW Main Street, Suite 213, Portland, OR 97205-3026, unless otherwise agreed in writing among You and the Trustee, and will continue from day to day until completed or adjoined by mutual consent of the parties. The examination will take place before a certified shorthand reporter, who will record the deposition stenographically and/or by videotape. Counsel for the Trustee and any creditors or parties-in-interest shall appear at the Office of the United States Trustee, George C. Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, Florida 32801 for the examination of the Debtor.

3. The subject matter of the Bankruptcy Rule 2004 examination will cover all matters relating to the items listed on **Exhibit A** attached hereto.

PLEASE TAKE FURTHER NOTICE that, in connection with taking this Bankruptcy Rule 2004 examination, You shall produce the documents listed on **Exhibit A** attached hereto no later than **Friday, February 29, 2019, at 9:00 a.m. (EST)** to Kristen L. Henkel, at the offices of M.E. Henkel, P.A., 3560 S. Magnolia Ave., Orlando, FL 32806-6214 or Micheal W. Bishop, at the offices of Gray Reed & McGraw LLP, 1601 Elm Street, Ste. 4600, Dallas, Texas 75201 and mbishop@grayreed.com, special counsel to the Trustee.

Respectfully submitted this 27th day of February, 2019.

**GRAY REED & McGRAW LLP**

By: */s/ Micheal W. Bishop*
    Micheal W. Bishop (*pro hac vice*)
    Texas Bar No. 02354860
    Lydia R. Webb (*pro hac vice*)
    Texas Bar No. 24083758
    Amber M. Carson (*pro hac vice*)
    Texas Bar No. 24075610
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email:    mbishop@grayreed.com
          lwebb@grayreed.com
          acarson@grayreed.com

- and -

**M. E. HENKEL, P.A.**

    Kristen Laurel Henkel
    Florida Bar No. 81858
3560 S. Magnolia Ave.
Orlando, Florida 32806
Telephone: (407) 438-6738
Facsimile: (407) 858-9466
Email:    khenkel@mehenkel.com

**SPECIAL COUNSEL TO THE TRUSTEE**

2

## **CERTIFICATE OF SERVICE**

  I hereby certify that on February 27, 2019, a true and correct copy of the foregoing Notice was served via CM/ECF to all parties authorized to receive electronic notice in this case, on the Trustee by electronic mail, and those parties set forth below via first class U.S. mail, postage prepaid.

| | |
|---|---|
| Walter J. Snell<br>Snell and Snell, P.A.<br>436 N Peninsula Drive<br>Daytona Beach, FL 32118<br>*Counsel for Darcy L. LaPier* | Darcy L. LaPier<br>36550 NE Wilsonville Road<br>Newberg, OR 97132 |

             */s/ Micheal W. Bishop*
             Micheal W. Bishop

**Exhibit A**

**Documents for Production**

**Definitions**

The terms "And" and "or" shall be construed either disjunctive or conjunctive to ensure the provision of additional information or more complete answers and to avoid the questions herein being considered ambiguous, inaccurate or confusing.

The term "Any" shall be understood to include "all" and vice versa.

The term "Bankruptcy Case," as used in the below requests, shall mean the chapter 7 bankruptcy case of Darcy L. LaPier, Case No. 18-03643-CCJ, in the Middle District of Florida, Orlando Division.

The term "Communication" means by way of illustration and not by way of limitation, the exchange of words, thoughts or ideas whether by document or by conversation, any oral or written expression, statement, or utterance of any nature, and made by or to anyone, including without limitation, correspondence, conversations, agreements, electronic communications, or other understandings between or among two or more persons. The term "communication" shall also include any documents, notes, or memos memorializing or relating to any oral conversation.

The term "Computer Systems" shall mean any configuration of computer equipment whether it is set up to be operated as a single unit or integrated into a system with multiple units. Specific examples of "Computer Systems" include, but are not limited to, personal computers (PCs), desktops, laptops, and PDAs.

The terms "Document" or "Documents" means each and every writing or record of every type and description, regardless of the medium upon which it is or was produced, reproduced, recorded, maintained, or retrieved, whether draft or final, original or reproduction, signed or unsigned, and **regardless of its origin and location, that is under your possession, custody, or control, to which you have or had access, of which you have knowledge, or of which you have a right or privilege to examine upon request or demand, or under the access, possession, custody, or control of any agent, insurer, or attorney of yours** and which includes, and which is not limited to, correspondence, letters, ledger sheets, contracts, electronic communications, electronic mail, text/SMS messages, electronic spreadsheets, EXCEL spreadsheets, negotiable instruments, communications, agreements, memoranda, notes, reports, diaries, calendars, telegrams, summaries, demographic or written notes, ledgers, invoices, bill of lading, receipts, checks, checkbooks, charts, graphs, drawings, blueprints, diagrams, worksheets, studies, bulletins, notices, instructions, manuals, pamphlets, periodicals, newspapers, newspaper articles, journals, logs, indices, minutes, photographs, microfiche, microfilm, telephone records, video or audio tape recordings, movies, computer data or disks, or other data compilation from which information can be obtained and all materials similar to any of the foregoing, and any writings or recordings as "writing" and "recordings" are used in Rule 1001 of the Federal Rules of Evidence, however denominated and by whomever prepared and to whomever addressed, and any other documents or

things subject to Rule 33 of the Federal Rules of Civil Procedure. Any document bearing notations, marks or writings of any kind different from the original shall be treated as an original document.

The term "Each" shall be understood to include and encompass "every" and vice versa.

The term "Oregon Real Estate," as used in the below requests, shall mean that certain real property more fully described in **Exhibit B** attached hereto.

The terms "Refer" or "relate" shall mean directly or indirectly mentioning or describing, pertaining to, being connected with or reflecting upon a stated subject matter.

The term "Rice," as used in the below requests, shall mean Ronald J. Rice, ex-husband of the Debtor, any and all corporations or entities owned and/or affiliated with Ron Rice, including, but not limited to, 36860 Northeast Wilsonville Road LLC, an Alaskan limited liability company, Dash ta da Moon, LLC, and all representatives, attorneys, employees, and agents of Ronald J. Rice and his owned and/or affiliated corporations or entities.

The term "Rodeo Girls," as used in the below requests, shall mean the television show titled *Rodeo Girls*, released on or about December 11, 2013 by The Weinstein Company on the A&E network.

The term "Trust," as used in the below requests, shall mean the Darcy Lapier Hughes Trust, the Darcy Lapier Snodgrass Trust, the Snodgrass Darcy Lapier Trust, or any other trust created by Debtor (as such may have been amended, supplemented or restated from time to time).

The term "Trustee," as used in the below requests, shall mean the Chapter 7 Trustee, Marie E. Henkel.

**Instructions**

1. All documents are to be produced, indicating to which request they are responsive, and are to be sequentially numbered.

2. **This Request is intended to cover all documents under your possession, custody, or control, to which you have or had access, of which you have knowledge, or of which you have a right or privilege to examine upon request or demand, or under the access, possession, custody, or control of any agent, insurer, or attorney of yours.**

3. **If any responsive document is no longer in your possession, custody or control, please describe the information contained in the document, the document date, all persons who at one time had custody of such document, the reason it is no longer in your possession, custody or control, and the name and address of the person who currently has possession, custody or control of the document**.

4. Should you object to or claim limitation or privilege with respect to any part of this Request, Trustee requests that it be furnished with a numerical list and description of those documents or other items with respect to which objection is made, indicating:

2

    (a)    the name or names of the author, sender, or initiator of the document or other item, if any;

    (b)    the name of the recipient, addressee, or party for whom such document or other item was intended and the parties to whom copies were sent, if any;

    (c)    the date of the document or an estimate of the date if no date appears on the document;

    (d)    the general subject matter of the document or such other description as is sufficient to identify the document;

    (e)    the nature of the privilege claimed or the ground of objection asserted; and

    (f)    the number of the request to which the document or item is responsive.

5.    In construing these requests:

    (a)    the singular shall include the plural and the plural shall include the singular;

    (b)    a masculine, feminine or neuter pronoun shall not exclude the other genders; and

    (c)    each request shall extend to all documents which are or have been in the possession or subject to the control of you or anyone acting at your direction at any time during the period of time covered by the request.

6.    If you refuse to respond to any request, in whole or in part, on the basis that such request or response is unduly burdensome or impractical, fully disclose what information or documents you believe may be reasonably disclosed, and then provide that information or those documents.

7.    The Request shall be deemed to be continuing, and supplementation is required within a reasonable time after learning new or more accurate information.

8.    Each and every one of the documents requested below specifically request, *inter alia*, the production of electronically and magnetically stored information including electronic documents and files, which include not only word processing documents, spreadsheets, and e-mails, but also databases, pictures, images, and any other kind of information or file that is responsive to the request regardless of the form in which it is created or saved. Electronically and magnetically stored information includes, without limitation, all information stored on computer systems, stored in or on hard disks, external drives, network area storage devices (NAS), storage area networks (SAN), drive arrays, floppy disks, jazz disks, zip disks, thumb drives, USB drives, optical disks, compact disks, digital video disks, digital versatile disks, magnetic tapes, and any other device or method of storing electronic or magnetic information.

9.    In producing electronically or magnetically stored information in response to the following requests for production, the information shall be produced in its native file format with

all information and metadata intact and unchanged. Native file format means the format in which the system or application device or software that creates, saves, or modifies the information creates, saves, or stores that information. Production of databases requires the production of all data sets or tables containing the responsive information as well as all query, template, and relationship files necessary to utilize the database as designed. E-mail shall be produced by saving all responsive e-mail messages and related attachments in Microsoft personal storage files (PSTs) for Microsoft Exchange based e-mail. For information created using proprietary software or legacy software no longer reasonably commercially available, the information shall be exported to a widely available industry standard file format, such as any program within the Microsoft or Corel office suites or the files and programs necessary to view the information shall also be produced.

10. In producing the native files in response to the following requests for production, the files shall be saved on compact disks (CDs) or digital versatile disks (DVDs) readable in a Microsoft Windows operating system environment. Production shall be made such that the original location of the information being produced is readily identifiable. For example, each CD could contain only information from one source, or production could be segregated into folders labeled to identify the source.

11. Possession and control of electronically and magnetically stored information includes any source or device on or in which electronically and magnetically stored information exists or is stored over which you hold or may hold by exercise of rightful ownership, control or legal ability, and specifically includes personal computers and laptops and other devices not owned by you but owned by your employees, employers, representatives, and agents.

**Requests for Production**

1. A description of all jewelry in the Debtor's possession from June 1, 2008 through the present date, including the owner of the jewelry, the approximate value(s), the purchase price(s) and date(s) of possession of such jewelry;

2. A description of all jewelry owned by the Debtor or any entities affiliated with or related to the Debtor (including Dash ta da Moon LLC and Barn Door Enterprises LLC) from June 1, 2008 through the present and the disposition of such jewelry, including the date of the transfer, gift, or sale of the jewelry, the recipient, transferee, or buyer of the jewelry, and the consideration received by the Debtor for the jewelry;

3. The name(s), addresses and cell phone numbers of each person/company from whom the Debtor purchased hay and/or shavings during the last five years;

4. Photos of each of the paintings and other artwork currently located in the Oregon Property (as defined in the Rule 2004 notice of Debtor) and the name(s) of each respective artist of the paintings/artwork;

5. Photos of each of the paintings and other artwork that are or were located at the Oregon Property that were sold to Ronald J. Rice and the name(s) of each respective artist of the paintings/artwork;

6. The name, address and cell phone number of the Debtor's currently surviving sister;

4

7. The names and addresses of each person/company to whom the Debtor (or any entities affiliated with or related to the Debtor including but not limited to the Dash ta da Moon LLC and Barn Door Enterprises LLC) transferred, gifted, or sold any saddles or tack from June 1, 2012 through the present date, including a description of the saddle/tack transferred, gifted, or sold and the amount originally paid for the saddle/tack;

8. A description of all saddles and tack purchased or otherwise received (by gift or otherwise) by the Debtor (or any entities affiliated with or related to the Debtor including but not limited to Dash ta da Moon LLC and Barn Door Enterprises LLC) from June 1, 2012 through the present, including the price paid for the saddle/tack and the person/entity making the purchase;

9. All documents and correspondence, including emails and text messages, between the Debtor and any other party regarding any negotiations of the Renunciation dated November 22, 2013 wherein the Debtor waived or renounced any interest in the Ronald J. Rice Trust of October 1, 1979;

10. All documents and correspondence regarding or relating to the Debtor's interest (past or future interest) in the Ronald J. Rice Trust of October 1, 1979;

11. All correspondence, including emails and text messages, regarding any negotiations of the Prenuptial Agreement dated December 23, 2013 by and between the Debtor and Ronald J. Rice;

12. Any and all correspondence or documents between Walter Snell and any other party regarding or relating to the Debtor;

13. Any and all correspondence, documents and other communications by and between counsel for Debtor and Ronald J. Rice or counsel for Ronald J. Rice in any manner regarding or relating to the Renunciation dated November 22, 2013 wherein the Debtor waived or renounced any interest in the Ronald J. Rice Trust of October 1, 1979 and/or the Prenuptial Agreement dated December 23, 2013 by and between Debtor and Ronald J. Rice. (The Trustee requests authority from the Debtor to contact the attorney who represented the Debtor at the time the Renunciation and Prenuptial Agreement were signed to ask for a copy of all of the communications and documents in this paragraph);

14. All agreements and correspondence, including emails and text messages, regarding or relating to the transfer made on or about February 22, 2011 of $900,000 from the Debtor (or an entity affiliated with or related to the Debtor) to Ronald J. Rice or any entity affiliated with or related to Ronald J. Rice;

15. All correspondence, including emails and text messages, regarding or relating to the transfer made on or about April 9, 2012 of $500,000 from Dash ta da Moon LLC to Ronald J. Rice;

16. All documents showing, regarding or evidencing, the source of the funds transferred on or about February 22, 2011 in the amount of $900,000 from the Debtor (or an entity affiliated with or related to the Debtor) to Ronald J. Rice or any entity affiliated with or related to Ronald J. Rice;

17. All documents showing, regarding or evidencing, the source of the funds transferred on April 9, 2012 in the amount of $500,000 from Dash ta da Moon LLC to Ronald J. Rice;

18. A complete list of all payments made from Ronald J. Rice (or any entity related to Ronald J. Rice) to the Debtor or any entity affiliated with or related to the Debtor from June 1, 2008 through the

5

present, including the amount and date of each payment and including all deposits made into Dash ta Da Moon LLC, Dash Enterprises LLC, and Barn Door Enterprises LLC bank accounts;

19. Any and all receipts or other documentation detailing or supporting each deposit from Ronald J. Rice or any entity affiliated with or related to Ronald J. Rice to the Debtor or any entity related to the Debtor (including Dash ta da Moon LLC and Barn Door Enterprises LLC) from June 1, 2008 through the present;

20. Any and all agreements, documents and communications regarding or evidencing any assets acquired in the name of Debtor, Dash ta da Moon LLC, Dash Enterprises, LLC, Barn Door Enterprises LLC or any other entity affiliated with or related to Debtor, where the purchase price of the asset was paid by Ronald J. Rice or an entity affiliated with Ronald J. Rice;

21. Any and all receipts or other documentation detailing or supporting each payment or withdrawal from any bank account of the Debtor or any entity affiliated with or related to the Debtor (including Dash ta da Moon LLC, Dash Enterprises LLC, and Barn Door Enterprises LLC bank accounts) to, on the behalf of, or for the benefit/support of Nicholas Van Varenberg or any entity related to Nicholas Van Varenberg (including payments related to Pilier, LLC);

22. Any and all receipts or other documentation detailing or supporting each payment or withdrawal from any bank account of the Debtor or any entity affiliated with or related to the Debtor (including Dash ta da Moon LLC, Dash Enterprises LLC, and Barn Door Enterprises LLC bank accounts) to, on the behalf of, or for the benefit/support of Sterling Rice or any entity related to Sterling Rice;

23. Any and all receipts, cancelled checks and other documentation detailing the source of each deposit made into any bank account of the Debtor or any entity related to the Debtor (including Dash ta da Moon LLC, Dash Enterprises LLC, and Barn Door Enterprises LLC bank accounts) from June 1, 2008 through the present, including those that are purportedly obtained from rent payments, rodeo winnings, or from Ronald J. Rice;

24. Account statements from June 1, 2012 to Debtor's bankruptcy petition date for any PayPal and Venmo accounts, of the Debtor or any entities affiliated with or related to the Debtor including Dash ta da Moon LLC, Dash Enterprises LLC, and Barn Door Enterprises LLC;

25. All purchase documents, certificates of title, loan documents, registrations (including American Quarter Horse Association registrations), and titles for all horses and vehicles owned by the Debtor or any entity related to the Debtor (including Dash ta da Moon LLC and Dash Enterprises LLC) at any time from June 1, 2008 to the present date;

26. Any and all documents showing the source of funds used to purchase the horses and vehicles owned by the Debtor or any entity affiliated with or related to the Debtor (including Dash ta da Moon LLC) at any time from June 1, 2008 to the present date;

27. Any and all documentation or receipts evidencing or related to any and all assets sold by Dash ta da Moon LLC, Dash Enterprises, LLC, Barn Door Enterprises LLC, or Debtor and the use of the proceeds from such sales from June 1, 2012 to the present date;

28. A copy of the trust agreement (and any amendments or supplements thereto) for the Ronald J. Rice Trust of October 1, 1979;

29. A copy of any trust agreement in which Debtor (i) is or may have been a beneficiary, (ii) is or may have had any right to withdraw funds from such trust;

30. Agreements, documents and communications in any way regarding or relating to any loans made by Ronald J. Rice and liens granted to Ronald J. Rice on any vehicles at any point owned by Dash ta da Moon LLC;

31. All statements (including cancelled checks, deposit slips, and wire transfer receipts) from banks, financial institutions, and/or brokerage houses in the name of Debtor, Dash ta da Moon LLC, Dash Enterprises LLC, Barn Door Enterprises, LLC, the Trust, or for which Debtor, Dash ta da Moon LLC, Dash Enterprises LLC, Barn Door Enterprises, LLC, or the Trust had the right and authority to withdraw funds at any point between June 18, 2008 and June 18, 2018, including those from accounts that are currently closed;

32. Name, address, entity name, and contact name and cell phone number for the rodeo/entity that Debtor testified was given a saddle(s) as part of a promotion for a rodeo with a value of approximately $6,000.00;

33. All agreements or contracts supporting, relating to or evidencing any deposits made into any bank account of Debtor or any entity affiliated with or related to the Debtor (including Dash ta da Moon LLC and Barn Door Enterprises LLC) from June 1, 2008 to the present date;

34. An itemized listing of all clothing claimed as exempt by Debtor in Debtor's bankruptcy case;

35. A photograph of the second turquoise ring claimed as exempt by Debtor in this bankruptcy case;

36. A photograph of all costume jewelry Debtor claims as exempt in this bankruptcy case;

37. A copy of all bank statements, deposit slips, cancelled checks and withdrawal slips from all bank accounts in which Debtor had authority to withdraw funds from June 1, 2008 through the present date, including but not limited to, the following bank accounts: (1) Washington Federal (account number ending 790), (2) NMS Investments LLC (account number ending 3755), (3) US Bank - Dash ta da Moon LLC (account number ending 5867), (4) US Bank - Dash ta da Moon LLC (account number ending 5008), and (5) US Bank – Barn Door Enterprises, LLC (account number ending 1709).

5205060.1
4841-1550-0169, v. 1